## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. CR-08-0057-25 (BJR)** |
| **v.** | |
| **EDIEL LOPEZ FALCON,** | |
| **Defendant.** | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, through undersigned counsel, respectfully submits this Memorandum in Aid of Sentencing, in accordance with Title 18 United States Code § 3553(a) and the United States Sentencing Commission, *Guidelines Manual,* § 6A1.2 (Nov. 2014).   The Government seeks a sentence of 216 months imprisonment as a sentence that is sufficient, but not greater than necessary, to comply with the purposes of Title 18 United States Code § 3553(a); and is in accord with the terms set forth in the plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) .

## I.   BACKGROUND

### A. Procedural History

On May 9, 2013, the Defendant was charged, in the District of Columbia, in a Fourth Superseding Indictment for his role in the conspiracy, the object of which was to: (1) knowingly and intentionally manufacture and distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing and

1

intending that such substance would be unlawfully imported into the United States from Mexico, and (2) knowingly and intentionally manufacture and distribute 1,000 kilograms or more of a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, knowing and intending that such substance would be unlawfully imported into the United States from Mexico; all in violation of Title 21, United States Code, Sections

On February 3, 2015, the Defendant entered a plea of guilty to Count 1 of the Indictment. The Defendant's plea agreement was presented to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).   Pursuant to Rule 11(c)(1)(C), the parties agreed that a sentence of 216 months followed by a term of at least five years of supervised release was the appropriate sentence in this case.   The Defendant is scheduled to be sentenced on June 18, 2015.

B. The Defendant's Conduct

In furtherance of this conspiracy, the Defendant operated within the Mexican drug cartel known as "The Company," which was responsible for the distribution of multi-ton quantities of cocaine and marijuana intended for importation into the United States.

The Company controlled hundreds of miles of Mexican territory along the border of Mexico and the United States, as well as other regions throughout Mexico.   The Company divided its territory into areas known as "plazas" and assigned each plaza region a leader known as a "plaza boss."   The Company transported large cocaine shipments via boats, planes, and automobiles from Colombia and Venezuela to Guatemala, and then to various cities and plazas in Mexico.   The Company transported large quantities of marijuana grown in Mexico to the border with the United States using tractor-trailers and other types of motor vehicles.   The

Company then transported the shipments of cocaine and marijuana by various means from Mexico to cities in the United States for distribution.

The Government would have proven at trial that as a member of The Company, the Defendant was closely associated with Samuel FLORES-Borrego, also known as "Tres" and "Metro Tres" (hereinafter "FLORES"), a high-ranking member of The Company, who operated exclusively in Mexico.   FLORES controlled The Company's operations in and around Reynosa and Miguel Aleman, Mexico, which are areas along the border with the United States, well known to be key drug trafficking areas.   As a former Mexican law enforcement official, FLORES obtained and provided information to members of The Company regarding law enforcement operations directed against The Company, which helped members of The Company avoid capture and protected The Company's drugs, weapons, and money shipments.   FLORES was also actively involved in managing the drug trafficking activities of The Company in Mexico, including the coordination of cocaine and marijuana shipments into the United States, as well as the receipt of bulk currency shipments into Mexico from the United States.   FLORES used armed violence and often utilized members of Los Zetas, The Company's armed faction, to that end, in the furtherance of the conspiracy.

The Government would have presented evidence at trial, in the form of testimony from witnesses and judicially authorized wiretaps, would show that the Defendant knowingly, intentionally, and willfully operated under the direction of FLORES and supported the mission of The Company, by, among other activities, becoming directly involved in the importation of cocaine and marijuana into the United States.   Furthermore, the evidence would have shown that the Defendant began as an independent drug trafficker around 1997 and joined the charged

conspiracy as a member of The Company around 2000.   The Government's witnesses would have established that the Defendant was in Mexico at the time that he came to an agreement with other individuals to conspire to distribute cocaine and marijuana for importation into the United States.

The Government's evidence would have established at trial that as a member of The Company, the Defendant maintained stash locations in the area of Miguel Aleman, Tamaulipas, Mexico, where the drugs were stored for eventual transportation into the United States.   The Defendant also directly oversaw the transport of drugs from Mexico into the United States by other members of the conspiracy.   The Defendant also collected payments in Miguel Aleman on behalf of FLORES from individual drug traffickers who brought shipments of drugs through the Miguel Aleman plaza that did not belong to The Company collectively.   The Defendant was also tasked by FLORES to obtain weapons, such as assault rifles, to be used by members of the Company to protect the organizations drug and money shipments and transportation routes. Finally, the evidence would have shown that The Company also bribed law enforcement officials in order to accomplish its goals and that the Defendant relied on these bribes to further the objectives of the conspiracy.

C. Legal Framework for Sentencing

Under the Sentencing Reform Act, as interpreted by the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the District Court follows a two-step process when imposing a sentencing on a Defendant.   First, the Court must properly calculate and consider the Defendant's Sentencing Guideline range.   *Booker*, 543 U.S. at 245; *United States v. Coumaris*, 399 F.3d 343, 351 (D.C. Cir. 2005); *United States v. Ventura*, 481 F.3d 821, 823(D.C. Cir.

2007).   The Sentencing Guidelines "should be a starting point and the initial benchmark."

*United States v. Gall*, 552 U.S. 38, 49 (2007).   The Sentencing Guidelines are advisory, not

mandatory.   *United States v. Motley*, 587 F.3d 1153, 1158 (D.C. Cir. 2009) ("In *Booker*, the

Supreme Court excised the statutory section that had made the Guidelines mandatory, thus

rendering them advisory"); *United States v. Dorcely*, 454 F.3d , 366, 375 (D.C. Cir. 2006) ("In a

post-*Booker* world, the [sentencing] court must calculate and consider the applicable Guidelines

range but is not bound by it.")

      However, the Sentencing Guidelines are not the only consideration.   In the second step,

the Court must "tailor the sentencing in light of other statutory factors as well."   *Booker*, 543

U.S. at 245-46; *Coumaris*, 399 F.3d at 351.   Those statutory factors include the factors set forth

in Title 18, United States Code, § 3553(a), which include, *inter alia*,

(1)    the nature and circumstances of the offense and the history and characteristics of the Defendant;

(2)    the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes by the Defendant, and provide the Defendant with rehabilitation, education and training, and other correctional treatment; and

(3)    the need to avoid unwarranted sentencing disparities among Defendants with similar records who have been found guilty of similar conduct.

*United States v. Gall*, 552 U.S. at 49-50; *United States v. Booker*, 543 U.S. at 245.

The District Court "may not presume that the Guidelines range is reasonable."   *Gall*, 552 U.S. at

50, citing *United States v. Rita*, 551 U.S. 338, 351 (2007).   Instead, the Court at sentencing must

make an "individualized assessment based on the facts presented."   *Gall*, 552 U.S. at 50.

      In the instant case, pursuant to Rule 11(c)(1)(C), the parties presented for the Court's

consideration a plea agreement that calls for a sentence of 216 months, followed by a term of at least five years of supervised release.   If the Court accepts the plea agreement, then it may impose the agreed upon sentence of 216 months followed by a specified term of at least five years of supervised release; if the Court rejects the terms of the plea agreement, then it must afford the Defendant the opportunity to withdraw the guilty plea, and if the Defendant does not withdraw the plea, then the Defendant must be informed that the Court could impose a sentence greater than the sentence embodied in the plea agreement.

## II. ARGUMENT[1]

The Defendant objects to the findings in the Presentence Investigation Report (hereinafter "PSR") that the Defendant: possessed a dangerous weapon; participated in bribery and managed a group of individuals in the furtherance of the conspiracy.   As set forth below, the Probation Office calculated the sentencing guidelines to be a Level 39, Criminal History I, and did not find that the Defendant qualified for a two level increase under USSG § 3B1.1(c).   However, the Government urges the Court to accept the terms of the plea agreement and to sentence the Defendant to a term of imprisonment of 216 months.

### A. The Probation Office's Calculations of the Sentencing Guidelines

In the instant case, the Probation Office calculated the Defendant's Total Offense Level at Level 39, Criminal History I, with a Guideline range of 262 to 327 months imprisonment. PSR ¶¶ 108, 142, filed April 27, 2015.   The Probation Office correctly calculated a Base

---

1 The Government acknowledges that the Court's acceptance of the Plea Agreement and agreed upon sentence of 216 months pursuant to Fed. R. Crim. Proc. 11(c)(1)(C) renders this point moot. However, the Government is complying with paragraphs 6 and 16 of the Plea Agreement and its duty to inform the Court and Probation of all relevant sentencing factors.

Offense Level of 38, based on drug quantities, pursuant to USSG § 2D1.1(a)(5) and (c)(1).   PSR ¶¶ 47, 98.   The Probation Office found the Defendant accountable for over 1,000 kilograms of marijuana, noting that the conspiracy involved both marijuana and cocaine.   PSR ¶ 98.   The Probation Office applied a two-level enhancement because a dangerous weapon was possessed in connection with the conspiracy.   PSR ¶ 99.   The Probation Office next applied a two-level enhancement for the bribery of law enforcement officers to facilitate the commission of the offense.   PSR ¶ 100.   However, despite noting that the "defendant had a group of men who worked for him that crossed drugs from Mexico into Roma and McAllen, Texas," the Probation Office declined to apply a two-level enhancement under USSG § 3B1.1(c).   PSR ¶¶ 40, 92. The Probation Office found that the Defendant was eligible for a three-level acceptance of responsibility reduction, pursuant to USSG §§ 3E1.1(a) and (b).   PSR ¶¶ 106, 107.   Finally, the Probation Office determined that the Defendant's lack of a criminal record placed him in Criminal History Category I.   PSR ¶ 111.   Thus, the Probation Office determined that the Defendant's Sentencing Guideline range is 262 to 327 months.

### B. The Applicable Enhancements

In determining a defendant's appropriate offense level the Probation Office and the courts delineate a defendant's relevant conduct, which "encompasses the standard principle that a conspirator is liable for 'conduct of others in furtherance of the execution of the jointly undertaken criminal activity that was reasonably foreseeable by the defendant.'"   *United States v. Childress*, 58 F.3d 693, 721–722 (D.C. Cir. 1995) (internal citation omitted).   The D.C. Circuit "established a 'strict procedural mandate' that requires district courts to make explicit findings as to the scope of a defendant's conspiratorial agreement before holding him responsible

for a co-conspirator's reasonably foreseeable acts.   Absolute conformity with this mandate is

critical, else we risk holding defendants accountable for crimes committed in furtherance of

conspiracies they never joined." *United States v. Tabron*, 437 F.3d 63, 66 (D.C. Cir. 2006)

(internal citation omitted).   As discussed below, the Government would have produced evidence

at trial to prove that the Defendant's conspiratorial agreement included the possession and use of

dangerous weapons and the bribery of law enforcement officials in the furtherance of the

conspiracy.   Furthermore, the Government would have produced evidence at trial to

demonstrate that the Defendant played an aggravating role in the offense charged.   Therefore,

the application of a two level enhancement under USSG § 2D1.1(b)(1), a two level enhancement

under USSG § 2D1.1(b)(12), and a two level aggravating role enhancement under USSG §

3B1.1(c) are appropriate in this case.

> i.   <u>The Application of the Weapons Enhancement is Appropriate</u>

Pursuant to USSG § 2D1.1(b)(1), the Probation Office appropriately applied a two-level

enhancement for possession and use of a dangerous weapon.   PSR ¶ 99.   USSG § 2D1.1(b)(1)

is applicable if a dangerous weapon is possessed unless it is clearly improbable that the weapon

was connected to the offense.   At trial, the Government would have introduced intercepted calls

and witness testimony to establish that members of the conspiracy regularly possessed and used

weapons in the furtherance of the conspiracy during the time Defendant was a member, and that

the possession and use of weapons was reasonably foreseeable to all cartel members, including

Defendant.   PSR ¶¶ 33, 37, 38, 40, 42, 99.   Furthermore, the Government would have also

introduced intercepted calls involving the Defendant, in which the Defendant organized

shipments of weapons from the United States to Mexico for use by members of The Company

and which also demonstrated that the Defendant was at some point in possession of those weapons.

Courts have held that this enhancement is appropriate even when a dangerous weapon is possessed by a co-conspirator and where it is reasonably foreseeable that the defendant knew dangerous weapons were used in furtherance of the conspiracy. *United States v. Childress*, 58 F.3d 693, 725 (D.C. Cir. 1995) (holding that co-conspirator's possession of a handgun was reasonably foreseeable when conspirators "handled a substantial quantity of drugs and money"); *United States v. Mathis*, 216 F.3d 18, 28 (D.C. Cir. 2000) (holding that a two level increase at sentencing was appropriate where the possession of a firearm at the location of the crime was reasonably foreseeable to the defendant); *United States v. Souffront*, 338 F.3d 809, 832-33 (7th Cir. 2009) (holding that the district court did not err in concluding that the two-level enhancement was appropriate because the defendant was the leader of the Latin Kings and a firearm was found at the defendant's street-boss's apartment, the defendant ordered violence against the street-boss, and there was testimony at trial regarding the gang's use of violence as a means of discipline and security); *United States v. Trammell*, 220 Fed. App'x. 945, 947 (11th Cir. 2007) (holding that the enhancement was appropriate where the government proved by a preponderance of the evidence that the possessor of the firearm was a co-conspirator, the possession was in furtherance of the conspiracy, the defendant was a member of the conspiracy at the time of possession, and the possession was reasonably foreseeable to the defendant); *United States v. Batista*, 684 F.3d 333, 343-44 (2d Cir. 2012) ("Although a physical nexus between the defendant and the firearm is often useful in determining possession, such a nexus is by no means required in order for a court to impose the enhancement.   Rather, courts should

determine whether, by a preponderance of the evidence — including evidence relating to a defendant's specialized knowledge regarding the activities of drug gangs — possession of a firearm in connection with the offense was reasonably foreseeable by the defendant."); *United States v. Ortiz-Torres*, 449 F.3d 61, 77-78 (1st Cir. 2006) (holding that the district court did not err in concluding that the possession of firearms was reasonably foreseeable to the defendant where the agent testified that weapons were commonly used and he had seen weapons seized from members of the conspiracy and an unindicted co-conspirator testified that members of the conspiracy were always armed during drug deals and had personally seen the defendant with a firearm).

The Defendant's co-conspirators possessed and used dangerous weapons in the furtherance of the conspiracy and their possession and use was reasonably foreseeable to the Defendant.   Co-conspirator testimony at trial would have confirmed that The Company possessed and used weapons throughout the entire time of the charged conspiracy.   The Government's witnesses would have testified about the various weapons used and the numerous violent acts committed by members of The Company, including multiple killings committed on behalf of The Company to further its drug trafficking objectives.   Witnesses would also have testified that Los Zetas had access to M-16s, AK-47s, AR-15s, grenades, rocket launchers, and a host of other dangerous weapons and that Los Zetas were trained ex-military personnel who operated as The Company's enforcement group.

At trial, the Government would have also introduced intercepted telephone conversations between the Defendant and FLORES, one of the plaza bosses in Miguel Aleman, who requested the Defendant's assistance procuring pistols, "cuernos" and "Rs," which witness testimony

would have confirmed refer to AK-47s and AR-15s, respectively.   The following serve as examples of those intercepted communications:

On May 27, 2007, the Defendant and FLORES were intercepted in a telephone conversation discussing dangerous weapons.   Attachment A.   During this call, the Defendant tells FLORES that a person in Houston has two 308s, one R-15, and one AK-47.   Att. A, ln. 2. The Defendant further states that he is in possession of an R-15 in Roma, Texas and that he (the Defendant) will see about crossing it into Mexico.   Att. A, ln. 4, 8.

Again on May 28, 2007, in an intercepted telephone conversation, FLORES asks the Defendant if he crossed the AK-47 and the AR-15.   Att. B, ln. 8.   The Defendant responds by saying that he has the AR-15, and that he will cross the AK-47 the next day.   Att. B, ln. 9, 11.

The intercepted conversations between the Defendant and FLORES and witness testimony about the violent methods used by The Company to carry out its drug trafficking activities establish that the possession and use of dangerous weapons by the Defendant and other members of the conspiracy was in furtherance of the conspiracy.   Based on the Defendant's own participation drug trafficking and in securing weapons for FLORES, it was more than reasonably foreseeable to Defendant that members of The Company possessed dangerous weapons in connection with the conspiracy.   Furthermore, the evidence would have established that the possession and use of dangerous weapons by the Defendant and co-conspirators were within the scope of the conspiracy agreed to by the Defendant.

        ii.      <u>The Application of a Two Level Increase for the Bribery of a Law Enforcement Official is Appropriate.</u>

Pursuant to USSG § 2D1.1(b)(12), the Probation Office appropriately applied a two-level enhancement.   PSR ¶ 100.   The Government's witnesses would have established at trial that

The Company bribed Mexican law enforcement officials to facilitate its drug trafficking and related activities, including but not limited to warning members of the conspiracy of impending enforcement actions against The Company and providing protection for The Company's drug shipments.   PSR ¶ 36.   Furthermore, the Government's witnesses would have testified that The Company used its drug related proceeds to facilitate these payments to law enforcement officials. PSR ¶ 45.   Intercepted communications of the Defendant and other co-conspirators would have further established that the scope of the Defendant's conspiratorial agreement included bribery of law enforcement officials in the furtherance of The Company's drug trafficking activities.   PSR ¶ 46.   The following serves as an example:

On May 25, 2007, the Defendant was intercepted communicating with FLORES about a shipment of drugs that was stopped by a Federal Highway Police Officer in Oaxaca, Mexico. Attachment C, ln. 2.   Government witnesses would have testified at trial that in this phone call the Defendant sought verification from FLORES that the shipment belonged to a member of The Company.   Witnesses would have further explained that The Company paid members of the Federal Highway Police to allow The Company's drug shipments to move freely throughout Mexico.   The witnesses would have testified that in this phone call, the police officer was seeking verification that the shipment did in fact belong to The Company.   *Id.*   If such verification were given, then the shipment would not be seized by the police officer.   The Government's witnesses would have further established that bribery of law enforcement officials was essential to the success of The Company's drug trafficking activities.

The intercepted conversations between the Defendant and FLORES and witness testimony about the use of bribes to law enforcement officials in the furtherance of the

conspiracy would have established that the use of bribes was reasonably foreseeable to the

Defendant and were within the scope of the Defendant's conspiratorial agreement.   Therefore, a

two level enhancement pursuant to USSG § 2D1.1(b)(12) is appropriate.

> iii.   The Application of an Aggravated Role Enhancement is Appropriate.

The Probation Office did not apply a two level enhancement pursuant to USSG §

3B1.1(c).   However, the Probation Office correctly states that the Defendant "had a group of

men who worked for him that crossed drugs from Mexico into Roma and McAllen, Texas." PSR

¶¶ 40, 92.   The Guidelines elucidate criteria to determine a Defendants role: "[f]actors the court

should consider include the exercise of decision making authority, the nature of participation in

the commission of the offense, the recruitment of accomplices, the claimed right to a larger share

of the fruits of the crime, the degree of participation in planning or organizing the offense, the

nature and scope of the illegal activity, and the degree of control and authority exercised over

others."   Id. at Application Note 4.   Courts within this Circuit have often cited the factors

identified in Application Note 4, particularly emphasizing that "[t]he exercise of decision making

authority, recruitment, and a claimed right to a larger share of the proceeds are prominent among

the factors that the commentary to the Guidelines indicates should be considered."   *United*

*States v. Wilson*, 240 F.3d 39, 46-47 (D.C. Cir. 2001) (declining to engage in an "exegesis of the

concept of control" and instead emphasizing decision-making authority, recruitment and claim

over larger share of proceeds); *United States v. Brodie*, 524 F.3d 259, 270 (D.C. Cir. 2008).   For

instance, in *United States v. Brodie*, the District of Columbia Circuit placed particular emphasis

on the fact that the defendant "recruited individuals with specialized skills to facilitate his

scheme, … coordinated the group's efforts and directed them in the performance of their

respective tasks, … [and] paid the other participants flat fees for their services … [while keeping] the 'fruits of the crime' for himself," when upholding the District Court's determination on the issue of leadership.   *Brodie*, 524 F.3d at 270.

The Government's witnesses would have testified at trial that the Defendant oversaw a group of individuals responsible for crossing drugs into the United States on behalf of The Company.   The Defendant also oversaw a group of individuals responsible for distributing the drugs in the United States and for returning the narcotics proceeds back to Mexico.   PSR ¶ 43. Intercepted communications of the Defendant and other co-conspirators would have further established the Defendant's aggravating role.

For example, on July 25, 2008, the Defendant was intercepted speaking Onesimo Cruz, one of the individuals that the Defendant oversaw.   Attachment D.   The Government's witnesses would have testified that the Defendant and Onesimo were discussing logistics for future drug shipments.   During the conversation, Onesimo tells the Defendant "[y]ou are the one that is in charge, you are the boss.   We can tell this guy, or we can go with Juanito, However you want."   Att. D.   The Government's witnesses would have testified that the phone call established the Defendant as the decision maker for the group of individuals responsible for distribution of the drugs.   The Government would have further established that Onesimo Cruz was responsible for distributing drugs in the Houston, Texas area on behalf of the Defendant.

Based on witness testimony and intercepted communications, the Government's evidence would have established at trial that the Defendant managed individuals responsible for crossing drugs into the United States and further distributing them for sale in the United States, as well as a group of individuals who were responsible for transporting the narcotics proceeds back to

Mexico.   Therefore, a two level enhancement pursuant to USSG § 3B1.1(c) is applicable in this case.

### B. A Sentence of 216 Months is Appropriate in This Case

Under step two of the analysis, the Court must apply the statutory sentencing factors set forth in Title 18, United States Code, § 3553, and applying those statutory factors to the instant case, the Government respectfully submits that a sentence of 216 months is appropriate. Accordingly, the Government urges the Court to accept the terms of the plea agreement and impose a sentence of 216 months in the instant case.

A guilty plea in the instant case affords the Defendant the opportunity to accept responsibility for his conduct.   It avoids a costly trial, conserves scarce Department of Justice and judicial resources, prevents disclosure of cooperating witnesses and provides additional safety safeguards for cooperating witnesses and their families.   The Government respectfully submits that the 216 month sentence embodied in the plea agreement serves the interests of justice, and therefore, the agreed upon sentence should be accepted by the Court.

### 1. Nature and Circumstances of the Offense, and Need for the Sentence to Reflect the Severity of the Offense

The Defendant aided and abetted a major Mexican drug trafficking organization, and did serious harm to law enforcement efforts in the region.   The Company was responsible for transporting multi-ton quantities of cocaine and marijuana from Mexico to the United States and the Defendant's actions were in the furtherance of the drug trafficking conspiracy.   The Defendant directly participated in the movement of cocaine and marijuana from Mexico to the United States, as well as the shipment of bulk cash and weapons from the United States to Mexico in the furtherance of The Company's drug trafficking activities.   The Defendant

committed a serious offense which justifies 216 months in prison.

Cocaine and marijuana abuse has devastated communities in the United States, ruined lives, split families apart, inflicted violence on innocent by-standers, and wreaked havoc on children.   Its social costs have been enormous.   The Defendant's offense involved aiding and abetting individuals in Mexico who imported these drugs into the United States and it also involved the Defendant's direct participation in the importation of these drugs into the United States.   The Defendant's crime deserves a significant sentence in prison.

2.     Adequate Deterrence

Given the adverse impact that drug trafficking has on society and governments, it is important that the Court impose a sentence that deters others from undermining the rule of law. Further, while this prosecution has incapacitated some of the narcotics trafficking through Mexico, importation of controlled substances from Mexico into the United States still occurs. The agreed upon sentence of 216 months would provide a critical general deterrence to other narcotics traffickers that their participation in narcotics importation into the United States will result in substantial sentences.

3.     Protect the Public from Further Crimes of the Defendant

By pleading guilty, the Defendant has accepted responsibility for his criminal conduct, he will serve an appropriate prison sentence, and as a convicted felon, he will be deported to Mexico.   Accordingly, he will not constitute a continuing threat to the public.   Therefore, a term of imprisonment exceeding 216 months is not required in this particular case, despite the severity of the offense.

16

4.      The Need to Avoid Unwarranted Sentencing Disparities.

Section 3553(a)(6) articulates "the need to avoid <u>unwarranted</u> sentence disparities among defendants <u>with similar records</u> who have been found guilty of <u>similar conduct</u>."   18 U.S.C. § 3553(a)(6) (emphasis added).   By its terms, the statute requires a specific evaluation of the compared defendants' records and conduct.   When determining whether a sentence creates an unwarranted disparity, the Court should also consider, *inter alia*, a defendant's acceptance of responsibility, the nature and extent of a defendant's participation in the criminal activity, a defendant's criminal history, and whether and to what extent a defendant cooperated.   *See, e.g.*, *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (concluding that difference in sentences was "entirely explained" by co-defendant's acceptance of responsibility and thus any disparity resulting from defendant's "harsher" sentence was not unwarranted).   A defendant is only entitled to "a weighing of the section 3553(a) factors that are relevant to [his] case, not to a particular result."   *United States v. Carrasco-De-Jesus*, 589 F.3d 22, 29 (1st Cir. 2009).

Moreover, in *United States v. Joseph*, 399 F. App'x 599 (D.C. Cir. 2010), the D.C. Circuit determined that where the district court at sentencing conducted an appropriate comparison of the sentences of <u>co-conspirators</u> in a single case, that comparison satisfied § 3553(a)(6).   *See also*, *Gall*, 552 U.S. at 54-55 (acknowledging as an acceptable practice the comparison of sentences of co-defendants within the same conspiracy) ("[I]t seems that the judge gave specific attention to the issue of disparity when he inquired about the sentences already imposed by a different judge on two of Gall's co-defendants."); *United States v. Fernandez*, 443 F.3d 19, 31 n. 9 (2d Cir. 2006) ("The plain language of § 3553(a)(6) seems not to prohibit judges from considering disparities between co-defendants").   In turn, the prevailing practice in the

D.C. Circuit has been to compare co-defendants within the same case for unwarranted sentencing disparities rather than attempting to make comparisons to defendants in unrelated cases either within the District or outside the District.   *See, e.g., Mejia*, 597 F.3d at 1344; *United States v. Colwell*, 304 F. App'x 885, 885-86 (D.C. Cir. 2008) (upholding sentence against § 3553(a)(6) challenge on the basis of co-conspirators' criminal history category and number of fraudulent transactions in which co-conspirators participated, how much co-conspirators contributed to conspiracy's success, and crime to which each co-conspirator pled guilty); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007) (finding no unwarranted sentencing disparity because defendant and co-conspirators "did not hold comparable positions, either in the conspiracy or in their workplaces" and co-conspirators "provided substantial assistance in the investigation of the scheme, while [the defendant] did not").

The statutory sentencing factors call upon the Court to avoid <u>unwarranted</u> sentencing disparities among defendants with similar records that have been found guilty of similar conduct. In the instant case, the Defendant is not similarly situated to the other co-conspirators who have been sentenced in this case.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court accept the term of years embodied in the plea agreement, and sentence the Defendant to a term of imprisonment of 216 months followed by a period of supervised release of at least five years.


Respectfully submitted,

ARTHUR WYATT, Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice


By:      */s/ Adrián Rosales*
Adrián Rosales
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
145 N Street, NE
Washington, DC 20530
(202) 598-2281
Adrian.Rosales@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day of May 30, 2015, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of such filing (NEF) to the Defendant's counsels of record.

*/s/ Adrián Rosales*
Adrián Rosales
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
145 N Street, NE
Washington, DC 20530
(202) 598-2281
Adrian.Rosales@usdoj.gov
