UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDIEL LOPEZ FALCON,<br><br>Defendant. | CRIMINAL NO. CR-08-57-25 (BJR) |

## MOTION FOR PRELIMINARY ORDER OF FORFEITURE

The United States of America, by and through its undersigned attorney of the United States Department of Justice (hereafter the "Government"), respectfully moves as follows:

**I.  PROCEDURAL HISTORY**

1. The Defendant, Ediel Lopez Falcon (hereafter "Defendant"), a citizen of the United States, was charged by indictment with one count of conspiracy to distribute five kilograms or more of cocaine and 1,000 kilograms or more of marijuana, knowing and intending that it would be unlawfully imported into the United States, in violation of 21 U.S.C., §§ 959, 960, and 963. The conspiracy was alleged to have existed from approximately 2000 to February 2010. The Defendant entered a plea of guilty on February 3, 2015, wherein he consented to forfeiture of a personal money judgment in an amount to be determined. The sentencing is set for June 18, 2015.

2. The Government's evidence establishes that the Gulf Cartel, a Mexico-based criminal organization, also known as "The Company," was responsible for the distribution of

multi-ton quantities of cocaine and marijuana from Mexico into the United States. The evidence also shows the Cartel maintained an armed faction, known as "Los Zetas," which was made up of ex-military personnel. Los Zetas acted as enforcers and hit-men to protect the drug trafficking territory of the Gulf Cartel from rival drug traffickers.

3. Pursuant to a judicially authorized wiretap, the Defendant was intercepted discussing shipments of cocaine and marijuana, the acquisition of weapons, and the transportation of bulk cash with other co-conspirators, including Samuel Flores-Borrego, also known as "Metro Tres," and "Tres," who was one of the plaza bosses of Miguel Aleman, Tamaulipas, Mexico. The Defendant further supported the mission of The Company by becoming directly involved in the importation of cocaine and marijuana into the United States, transportation of drug proceeds back to Mexico from the United States and the acquisition of firearms for members of The Company.

5. The indictment contained a forfeiture allegation notifying the Defendant that upon conviction, he "shall forfeit to the United States, pursuant to Title 21, U.S.C., §§ 853 and 970, any and all respective right, title, or interest which such defendants may have in (1) any and all money and/or property constituting, or derived from any proceeds which such defendants obtained, directly or indirectly, as the result of the violations alleged in Count One of this Indictment and (2) any and all property used, in any manner or part, to commit, or to facilitate the commission of the violation alleged in Count One of this Indictment."

6. The Government alleged prior to and subsequent to the Defendant's plea of guilty that, given the absence of identifiable assets, the it would seek a money judgment against the

Defendant in an amount to be determined, which amount, as set forth hereafter, is hereby alleged to be $15,000,000,000 (fifteen billion dollars).[1]

7. Pursuant to a plea agreement, the Defendant consented to forfeiture of any assets located within the jurisdiction of the United States and elsewhere, including by not limited to cash assets as well as any asset, interest, or proceeds the Defendant received or could receive or cause to be received by a third party in the future, directly or indirectly, in whole or in part, from the Defendant's illegal activities.

8. The Defendant agreed to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal.   The Defendant also agreed to consent to the entry of orders of forfeiture and waived the requirements of FED. R. CRIM. P. 32.2(2) and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

## II.   ENTRY OF A PRELIMINARY ORDER OF FORFEITURE

9. This Court must enter a preliminary order of forfeiture regarding the money judgment.   *See* FED. R. CRIM. P. 32.2(b)(2)(A).

10. Rule 32.2 mandates that "the court must enter the preliminary order sufficiently *in advance of sentencing* to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant . . .".   FED. R. CRIM. P. 32.2(b)(2)(B) (emphasis added). Courts have interpreted this provision to require entry of a preliminary order of forfeiture *prior*

---

[1] On May 13, 2013, after a contested forfeiture hearing, the Honorable Barbara J. Rothstein entered a money judgment of $15,000,000,000 (fifteen billion dollars) in the related case against Aurelio Cano-Flores, 08-CR-57-13, based on The Company's gross receipts of marijuana and cocaine sales from 2000 to 2010.   As in the Cano-Flores case, the Government's request for a judgment in the amount of $15,000,000,000 (fifteen billion dollars) in the instant case is a conservative estimate of The Company's gross receipts from 2000 to 2010.

3

*to sentencing*. *See United States v. Schwartz*, 503 F. App'x 443, 445 (6th Cir. 2012) (holding that a court must rule on government's motion for preliminary order of forfeiture prior to sentencing) (emphasis added).

11. This Court has previously ordered that the hearing regarding the final amount of the money judgment will be held at the time of sentencing on June 18, 2015. As the Court, prior to the hearing, cannot calculate with certainty the total amount of the money judgment, Rule 32.2 provides that the Court may enter a preliminary order that describes the money judgment in general terms, and states that the order will be amended when "the money judgment has been calculated." FED. R. CRIM. P. 32.2(b)(2)(C).

12. In order to comply with Rule 32.2, the Government requests a preliminary order of forfeiture in which this Court orders a money judgment in favor of the United States of America for "a sum of money equal to the value of the property constituting, or derived from, any proceeds the Defendant obtained, directly or indirectly, as a result of the offense to which he was found guilty, for which the Defendant is jointly and severally liable with co-defendants in the underlying matter."

13. At sentencing the Government will request a money judgment against the Defendant for $15,000,000,000 (fifteen billion dollars), and offer additional evidence in support of that amount.

14. Rule 32.2 of the Federal Rules of Criminal Evidence also provides the procedures by which the Government must notice any litigate third party interests in specific forfeited properties and money judgments.

15.     However, the Court must enter the preliminary order of forfeiture without regard to any third party's interest in the specific forfeited properties.  *See* FED. R. CRIM. P. 32.2(b)(2)(A); *see also United States v. Andrews*, 530 F.3d 1232, 1236 (10th Cir. 2008) (finding that when issuing a preliminary order of forfeiture, "the court does not 'and, indeed, may not' determine the rights of any third parties who assert an interest in the property"); *United States v. Emor*, 850 F.Supp.2d 176, 217-18 (D.D.C. 2012) (same).  Third parties can contest the forfeiture of specific properties, including substitute assets, in an ancillary proceeding.  *See* FED. R. CRIM. P. 32.2(b)(2)(A).

16.     Third parties cannot contest the entry of a money judgment, because "'[a] money judgment is an *in personam* judgment against the defendant and not an order directed at specific assets in which any third party could have any interest.'"  *United States v. Zorrilla-Echevarria*, 671 F.3d 1, 5-6 (1st Cir. 2011) (quoting FED. R. CRIM. P. 32.2 advisory committee's notes on the 2000 amendments).

17.     In fact, Rule 32.2(c) provides that "no ancillary proceeding is required to the extent that the forfeiture consists of a money judgment."  As such, third parties do not receive notice of a money judgment.

18.     Whereas, here, the Government only seeks forfeiture of a money judgment, "the preliminary forfeiture order becomes final as to the defendant" at sentencing or at any time before sentencing with the Defendant's consent.  FED. R. CRIM. P. 32.2(b)(4)(A).

### III.    DETERMINATION OF A MONEY JUDGMENT

19.     Rule 32.2(b)(1)(A) provides that the Court shall determine "the amount of money that the defendant will be ordered to pay."  The Defendant is not entitled to a jury determination

5

on the amount of a money judgment. *See United States v. Grose*, No. 10-6277, 461 Fed.Appx. 786, 806, 806-07 (10th Cir. Feb. 23, 2012) (rejecting argument that jury can determine money judgment amount under Rule 32.2(b)(5)(A)); *United States v. Gregoire*, 638 F.3d 962, 972 (8th Cir. 2011) (holding that adjudication by a jury is unavailable as to money judgments, because Rule 32.2(b)(5)(A) only applies to the forfeitability of specific property) (citation omitted); *United States v. Tedder*, 403 F.3d 836, 841 (7th Cir. 2005) ("Rule 32.2 does not entitle the accused to a jury's decision on the amount of the forfeiture.").

20. The Government must prove the amount of the money judgment by a preponderance of the evidence. *See United States v. Roberts*, 660 F.3d 149, 166 (2nd Cir. 2011) (using a preponderance of the evidence standard to calculate the money judgment); *United States v. Pierre*, 484 F.3d 75, 86 (1st Cir. 2007) (holding that the government may use "either direct or circumstantial evidence" to establish the amount of the money judgment by a preponderance of the evidence); *United States v. Lewis*, 791 F. Supp. 2d 81, 94-95 (D.D.C. 2011) (court calculated money judgment based on a finding by a preponderance of the evidence).

21. The drug forfeiture statute directs courts to liberally construe its provisions to effectuate its remedial purpose. *See* 21 U.S.C. § 853(o). Courts have calculated expansive money judgments against this backdrop. *See United States v. Casey*, 444 F.3d 1071, 1073-77 (9th Cir. 2006) ("The criminal forfeiture statute mandates imposition of a money judgment on substitute property, and following Congress's command, we construe the provisions of the forfeiture statute liberally to further its purposes."); *see also United States v. Olguin*, 643 F.3d 384, 400 (5th Cir. 2011) (holding that Title 21, U.S.C. § 853 is to be interpreted broadly so as "to

reach every last dollar that flowed through the criminal's hands in connection with the illicit activity").

22.   The Government's calculations of the gross receipts generated by the conspiracy need not be exact, because criminals, especially drug traffickers, rarely keep detailed receipts of their ill gotten gains.  *See Roberts,* 660 F.3d at 166 ("Consequently, the law does not demand mathematical exactitude in calculating the proceeds subject to forfeiture . . . because the purpose of forfeiture is punitive rather than restitutive, district courts are not required to conduct an investigative audit to ensure that the Defendant 'is not deprived of a single farthing more than his criminal acts produced'")  (quoting *United States v. Lizza Indus., Inc.*, 775 F.2d 492, 498 (2d Cir.1985)); *United States v. Treacy*, 639 F.3d 32, 48 (2d Cir. 2011) (holding that the court must only make a reasonable estimate of the money judgment given the available information, because the "calculation of forfeiture amounts is not an exact science").

23.   In determining the amount of a money judgment, the Court may consider any evidence it deems reliable, including hearsay.  *See United States v. Ali*, 619 F.3d 713, 720 (7th Cir. 2010) (holding that because forfeiture is part of sentencing, less stringent evidentiary standards apply in the forfeiture phase of the trial; the evidence need only be "reliable"); *United States v. Capoccia*, 503 F.3d 103, 109 (2d Cir. 2007) (Rule 32.2(b)(1) allows the court to consider "evidence or information," making it clear that the court may consider hearsay; this is consistent with forfeiture being part of the sentencing process where hearsay is admissible); *United States v. Stathakis,* 2008 WL 413782, *14 n.2 (E.D.N.Y. 2008) (holding court can rely on law enforcement agent's reliable hearsay to determine the amount of the money judgment); *United States v. Evanson,* 2008 WL 3107332, *2 (D. Utah 2008) ("Because criminal forfeiture is

viewed as part of the sentencing process, hearsay is admissible") (citations omitted); *United States v. Gaskin*, 2002 WL 459005, *9 (W.D.N.Y. 2002) (finding that, in the forfeiture phase of the trial, the parties may offer evidence not already in the record; because forfeiture is part of sentencing, such evidence may include reliable hearsay), *aff'd*, 364 F.3d 438 (2d Cir. 2004); *United States v. Creighton*, 52 Fed. Appx. 31, 35-36 (9th Cir. 2002) (holding hearsay is admissible at sentencing and therefore may be considered in the forfeiture phase).

24. The Court may also rely on evidence from the "guilt phase" of the proceedings, supplemented by additional evidence. *See United States v. Capoccia*, 503 F.3d 103, 109 (2d Cir. 2007) (holding that the court may rely on evidence from the guilt phase of the trial, even if the forfeiture is contested; and it is not necessary for the Government to reintroduce that evidence in the forfeiture hearing); *United States v. Nicolo*, 597 F. Supp. 2d 342, 345 (W.D.N.Y. 2009) (holding the rules of evidence do not apply in the forfeiture phase of the trial; the court may rely on evidence from the guilt phase supplemented by an agent's affidavit); *United States v. Schlesinger*, 396 F. Supp. 2d 267, 271 (E.D.N.Y. 2005) (holding that under Rule 32.2(b)(1), the court determines the amount of the money judgment, or whether there is a sufficient nexus between the property and the offense of conviction, based upon evidence in the record of the criminal trial or evidence presented at a hearing after the verdict).

25. In narcotics cases, the Government typically proves the amount of gross receipts the conspiracy generated by multiplying the approximate quantity of drugs sold by the approximate price at which the drugs were sold. *See Roberts,* 660 F.3d at 165-66 (approving of calculation of money judgment by multiplying approximate price of drugs sold by the approximate amount sold); *United States v. Pierre*, 484 F.3d 75, 86 (1st Cir. 2007) (entering a

8

$500,000 money judgment based on "circumstantial evidence" that the defendant sold at least $3,000 worth of drugs per week for more than 3 years); *United States v. Bourne*, 2012 WL 526721, *3 (E.D.N.Y. Feb. 15, 2012) ("Here, the forfeiture judgment against Bourne can be calculated by multiplying the approximate number of shipments of cocaine for which he was responsible by the approximate weight of those shipments by the wholesale value of cocaine during the relevant time period.").

26.     The Government has made a conservative estimate of the gross receipts generated by the conspiracy during the time period alleged in the Indictment.   Drug Enforcement Administration (DEA) Special Agent Anthony Lewis will testify that, based upon extensive debriefs of cooperating members of The Company, including a high ranking member of the organization with detailed, first-hand knowledge of the Cartel's financial dealings, The Company's trafficking of cocaine and marijuana during the period 2000-2010 resulted in their receiving gross receipts of at least **$22,530,396,000**.   More specifically, the Government will present evidence that the approximate amount of illegal gross proceeds generated for the Gulf Cartel from each of the major plazas under their control during that period was as follows: Matamoros - **$5,150,400,000**; Rio Bravo - **$6,846,000,000**; Reynosa - **$3,338,208,000**; Diaz Ordaz - **$432,000,000**; Miguel Aleman - **$3,788,328,000**; Nuevo Laredo - **$55,740,000**; and Piedras Negras and Acuna - **$2,919,720,000**.

27.     The Government will respectfully request a money judgment of $15,000,000,000 (fifteen billion dollars), in the interest of using a reasonably conservative estimate of the gross receipts generated by The Company's conspiracy.

28. The Defendant's liability is joint and several with his co-conspirators; as such, his liability is not limited to his own sales. *See United States v. DeFries*, 909 F. Supp. 13, 19-20 (D.D.C. 1995) (holding that defendants are jointly and severally liable even where the government is able to determine precisely how much each defendant benefitted from the scheme), *rev'd on other grounds*, 129 F.3d 1293 (D.C. Cir. 1997); *see also Roberts*, 660 F.3d at 165 (stating that joint and several liability is mandatory for the amount of the money judgment in a drug case); *United States v. Pitt*, 193 F.3d 751, 765 (3d Cir. 1999) (same); FED. R. CRIM. P. 32.2 advisory committee's notes on the 2000 amendments (noting that "the conviction of any of the defendants is sufficient to support the forfeiture of the entire proceeds of the offense, even if the defendants have divided the money among themselves," because forfeiture liability is joint and several). Thus, the Defendant is liable for the full amount of illicit income received by the Gulf Cartel conspiracy.

## IV.   FORFEITURE OF SUBSTITUTE ASSETS

29. Pursuant to Rule 32.2(b)(3), the entry of a preliminary order of forfeiture authorizes the Government to conduct discovery to identify, locate, and dispose of property subject to forfeiture. *See, e.g., United States v. Hill*, 1:12-cr-44, 2012 U.S. Dist. LEXIS 136674, at *5 (W.D.N.C. Sept. 22, 2012) (authorizing discovery under Rule 32.2(b)(3)); *United States v. Gatta*, No. 10-668, 2012 U.S. Dist. LEXIS 101238, at *4 (D.N.J. July 19, 2012) (same). The Government can conduct such discovery to identify and locate all property subject to forfeiture, including substitute property. *See United States v. Smith*, No. 3:08-cr-31-JMH, 2010 U.S. Dist. LEXIS 134624, at *4 (E.D. Ky. Dec. 20, 2010) (Rule 32.2(b)(3) "provides that the Government may conduct discovery for the purpose of identifying and locating assets forfeited to the United

States, property traceable to such assets, or assets of the defendant that may be substituted up to the value of the forfeited assets."); *United States v. Gordon*, No. 09-CR-013-JHP, 2010 U.S. Dist. LEXIS 143836, at *6 (N.D. Okla. Sept. 15, 2010) (authorizing discovery under Rule 32.2(b)(3) for "identifying, locating or disposing of the property subject to forfeiture, or substitute assets for such property").

30.     Upon entry of a money judgment, the Government seeks discovery authority to identify and locate property that can be forfeited to satisfy that money judgment. *See United States v. Misla-Aldarondo*, 478 F.3d 52, 75 (1st Cir. 2007) ("[A] money judgment can be used in the future to seek forfeiture of substitute assets by court order under § 853(p) and Rule 32.2."). Discovery is necessary and appropriate here, because the Government has been unable to identify assets belonging to the Defendant.

## V.    **CONCLUSION**

For all these reasons, the Government respectfully requests this Court enter the attached Preliminary Order of Forfeiture granting a money judgment in favor of the United States of America for "a sum of money equal to the value of the property constituting, or derived from, any proceeds the Defendant obtained, directly or indirectly, as a result of the offense to which he was found guilty, for which the Defendant is jointly and severally liable with co-conspirators in the underlying matter," and that at the hearing to be held on this matter on June 18, 2015, the Court grant a money judgment against the Defendant in the amount of $15,000,000,000 (fifteen billion dollars).

        Respectfully submitted,

        ARTHUR G. WYATT, Chief
        Narcotic and Dangerous Drug Section
        Criminal Division
        U.S. Department of Justice

By:    /s/ Adrián Rosales
        Adrián Rosales
        Trial Attorney
        Narcotic and Dangerous Drug Section
        Criminal Division
        U.S. Department of Justice
        145 N Street, NE
        Second Floor, East wing
        Washington, D.C. 20530
        (202) 598-2281
        Adrian.Rosales@usdoj.gov

## **CERTIFICATE OF SERVICE**

   I hereby certify that on June 8, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

            ARTHUR G. WYATT, Chief
            Narcotic and Dangerous Drug Section

     By: /s/ Adrián Rosales
        Adrián Rosales
        Trial Attorney
        Narcotic and Dangerous Drug Section
        Criminal Division
        U.S. Department of Justice
        145 N Street, NE
        Second Floor, East wing
        Washington, D.C. 20530
        (202) 598-2281
        Adrian.Rosales@usdoj.gov